# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 20, 2010        Decided January 7, 2011

No. 09-1270

CHERYL A. TAYLOR AND STEVEN C. FINBERG,
PETITIONERS

v.

UNITED STATES DEPARTMENT OF AGRICULTURE AND UNITED
STATES OF AMERICA,
RESPONDENTS

---

On Petition for Review of Orders
of the Department of Agriculture

---

*Stephen P. McCarron* argued the cause and filed the briefs for petitioners.

*Andrew R. Varcoe*, Attorney, U.S. Department of Agriculture, argued the cause for respondents. With him on the brief were *James Michael Kelly*, Associate General Counsel, and *Brian J. Sonfield*, Assistant General Counsel.

Before: BROWN, *Circuit Judge*, and EDWARDS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

Dissenting opinion filed by *Circuit Judge* BROWN.

EDWARDS, *Senior Circuit Judge*: The Perishable Agricultural Commodities Act ("PACA") requires persons who buy or sell specified quantities of perishable agricultural commodities at wholesale in interstate commerce to have a license issued by the Secretary of Agriculture, *see* 7 U.S.C. §§ 499a(b)(5)-(7), 499c(a), 499d(a), and makes it unlawful for a licensee to engage in certain types of unfair conduct, *see id.* § 499b. The statute requires regulated merchants, dealers, and brokers to "truly and correctly . . . account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had." 7 U.S.C. § 499b(4). It also provides that PACA licensees may not employ, for at least one year, any person found "responsibly connected" to any person whose license has been revoked or suspended, or who has been found to have committed any flagrant or repeated violation of 7 U.S.C. § 499b. *See* 7 U.S.C. § 499h(b).

In January 2007, an Administrative Law Judge ("ALJ") at the Department of Agriculture ("Department") found that Fresh America, a national produce wholesaler licensed to do business under PACA, had willfully, repeatedly, and flagrantly violated Section 2(4) of PACA, 7 U.S.C. § 499b(4), by failing to promptly make full payment to produce sellers between February 2002 and February 2003. *In re Fresh Am. Corp.*, 66 Agric. Dec. 953, 959 (U.S.D.A. 2007). Fresh America did not contest this decision. While the case against Fresh America was pending, the Chief of the PACA Branch of the Fruit and Vegetable Division of the Agricultural Marketing Service determined that the petitioners in this case, Cheryl Taylor and Steven Finberg, who were officers of Fresh America, had been responsibly connected to Fresh America during the violations period and were therefore subject to the statute's employment restrictions. Taylor and Finberg sought administrative review of this determination.

In March 2009, following a two-day hearing, an ALJ issued a decision affirming the PACA Branch Chief's determinations and concluding that both Taylor and Finberg had been responsibly connected to Fresh America during the violations period. In September 2009, a Judicial Officer rejected the petitioners' administrative appeals. *In re Taylor*, PACA App. Docket Nos. 06-0008, 06-0009 (U.S.D.A. Sept. 24, 2009) ("*Judicial Officer Decision*"), *reprinted in* 1 Joint Appendix ("J.A.") 7. In holding against the petitioners, the Judicial Officer found that the petitioners were not merely nominal officers of Fresh America. The Judicial Officer also found that Fresh America was not the alter ego of its chairman of the board, Arthur Hollingsworth. Petitioners now seek review in this court.

We agree with petitioners that the Judicial Officer erred in rejecting their claims that they were merely nominal officers of Fresh America. Under 7 U.S.C. § 499a(b)(9), an "officer" of the offending company is not considered to be "responsibly connected" to a violating licensee if that person was not actively involved in the PACA violation and was "powerless to curb it," *Quinn v. Butz*, 510 F.2d 743, 755 (D.C. Cir. 1975). *See also Bell v. Dep't of Agric.*, 39 F.3d 1199, 1202 (D.C. Cir. 1994). The Judicial Officer in this case "paid little heed to circuit law on nominal officers," *id.*, for his decision is devoid of any analysis of the actual power exercised by Taylor and Finberg at Fresh America. The disputed decision is thus fatally flawed for want of reasoned decisionmaking. Accordingly, the petition for review is granted in part, and the case is remanded to the Department for further proceedings consistent with this decision.

## I. BACKGROUND

### A. *Statutory Background*

PACA prohibits certain conduct by merchants, dealers, or brokers of perishable agricultural commodities in order to "help instill confidence in parties dealing with each other on short notice, across state lines and at long distances." *Kleiman & Hochberg, Inc. v. U.S. Dep't of Agric.*, 497 F.3d 681, 685 (D.C. Cir. 2007) (quoting *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 604 (D.C. Cir. 1987)). PACA is "admittedly and intentionally a tough law." *Kleiman & Hochberg*, 497 F.3d at 693 (quoting S. REP. NO. 84-2507, at 3 (1956), *reprinted in* 1956 U.S.C.C.A.N. 3699, 3701 (internal quotation marks omitted)). As noted above, the statute forbids, *inter alia*, any merchant, dealer, or broker of perishable agricultural commodities from "fail[ing] or refus[ing] truly and correctly to account and make full payment promptly in respect of any transaction in any such commodity to the person with whom such transaction is had." 7 U.S.C. § 499b(4). In addition, PACA prevents licensees from employing, for a minimum of one year, "any person who is or has been responsibly connected" to a flagrant or repeated PACA violator. 7 U.S.C. § 499h(b).

> Under this statutory scheme,
>
> [a]n officer, director, or holder of more than ten percent of the stock of a corporation licensed under the PACA is presumed . . . to be 'responsibly connected' to that corporation. 7 U.S.C. § 499a(b)(9). For many years the circuits were divided over whether the presumption of § 499a(b)(9) is irrebuttable . . . or, as we held, rebuttable. See *Quinn v. Butz*, 510 F.2d at 757.

*Hart v. Dep't of Agric.*, 112 F.3d 1228, 1230 (D.C. Cir. 1997). Under the law of this circuit, a person could rebut the presumption that he or she was "responsibly connected" to a PACA violator in either of two ways:

> The first involve[d] cases in which the violator, although formally a corporation, [was] essentially an alter ego of its owners, so dominated as to negate its separate personality. . . .

> The second way of rebutting the presumption [was] for the petitioner to prove that at the time of the violations he was only a *nominal* officer, director, or shareholder. This he could establish by proving that he lacked an actual, significant nexus with the violating company. Where responsibility was not based on the individual's personal fault it would have to be based at least on his failure to counteract or obviate the fault of others.

*Bell*, 39 F.3d at 1201 (emphasis in original) (citations and internal quotation marks omitted).

"In 1995 the Congress amended § 499a(b)(9) to make it clear that the presumption is rebuttable." *Hart*, 112 F.3d at 1230. The statute now provides:

> The term "responsibly connected" means affiliated or connected with a commission merchant, dealer, or broker as (A) partner in a partnership, or (B) officer, director, or holder of more than 10 per centum of the outstanding stock of a corporation or association. A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of this chapter and that the person either was only nominally a partner, officer, director, or shareholder of a violating licensee or entity subject to license or was not an owner of a violating licensee or entity subject to license which was the alter ego of its owners.

7 U.S.C. § 499a(b)(9). Thus, under the current version of the statute, it is presumed that an officer of a corporation is responsibly connected to the violating company unless the

officer can show that he or she (1) was not actively involved in the PACA violations, and (2) was either a nominal officer of the violating PACA licensee or a non-owner of a licensee that was the alter ego of its owners.

## B. *Factual Background*

Cheryl Taylor joined Fresh America as a consultant in April 2001. Her primary tasks were to prepare and review Fresh America's filings for the Securities and Exchange Commission ("SEC"), confer with company accountants, and assist the company in its efforts to secure refinancing of existing debts. Shortly after signing a consulting agreement with Fresh America, Taylor was given the titles of executive vice president, chief financial officer, and secretary of the company, albeit without any additional compensation. According to Taylor, she was assigned these titles because the company "needed [her] to sign documents"; however, she stated that she did not do "any of the normal things that a CFO" does. Hearing Tr. (Jan. 29, 2008) at 362, 364, *reprinted in* 1 J.A. 142, 144.

In 1989, when he was a college student, Steven Finberg first started working with Gourmet Packing, a predecessor company to Fresh America. In 1999, after several promotions, Finberg was given the position of vice president of sales and marketing for Fresh America. His job responsibilities included managing Fresh America's national accounts and developing a marketing message on behalf of the company. In 2001, Finberg was given the title of executive vice president, although his job responsibilities remained the same. Hearing Tr. (Jan. 30, 2008) at 791-92, *reprinted in* 1 J.A. 277-78. In explaining his job, Finberg testified as follows: he never assumed any authority over the purchase of produce; he never was involved in a payment for produce; and he did not recall ever signing a check on behalf of the company. *Id.* at 799-800.

During the period when Fresh America committed the PACA violations that gave rise to this case, Arthur Hollingsworth, the co-founder and partner of the venture-capital and private-equity fund North Texas Opportunity Fund LP ("NTOF"), was chairman of the board. In 2001, NTOF invested $5 million in Fresh America and, as part of a financial restructuring of Fresh America, appointed four of the five members of the board. The record indicates that the company was largely run by the board. As one board member testified, under NTOF's leadership, "board meetings became the management of the company." Hearing Tr. (Jan. 29, 2008) at 146, 1 J.A. 96. And the board, not company officers or managers, made all decisions governing the company's bills, capital expenditures, and personnel. *Id.* at 146-49, 1 J.A. 96-99.

Both Taylor and Finberg attended most of the company's board meetings, but they were not members of the board. And even though they carried "officer" titles at Fresh America, neither Taylor nor Finberg had any measurable power or authority in board deliberations. For example, when the board addressed problems relating to the payment of bills, Taylor and Finberg stressed the need for the company to pay its bills on time. *Id.* at 91, 1 J.A. 84. However, the board rejected the advice offered by Taylor and Finberg. Instead, the board followed a policy of having Fresh America pay its bills when the company had the capacity to do so. *Id.* at 92, 1 J.A. 85. Both Taylor and Finberg remained with Fresh America until at least January 2003, when the company ceased operations.

## C. *The Proceedings Before the Agency*

In 2005, the Department filed a complaint against Fresh America, alleging that the company had committed PACA violations between February 2002 and February 2003 by failing to promptly pay a total of more than $1.2 million to 82 sellers of perishable agricultural commodities. The company defaulted on these charges. *In re Fresh Am. Corp.*, 66 Agric. Dec. 953

(U.S.D.A. 2007). In the summer of 2006, the Chief of the PACA Branch of the Fruit and Vegetable Programs Division of the Agricultural Marketing Service made an initial determination that, pursuant to 7 U.S.C. § 499a(b)(9), Taylor and Finberg were responsibly connected to Fresh America. *In re Taylor*, PACA App. Docket Nos. 06-0008, 06-0009 (U.S.D.A. Mar. 19, 2009) ¶¶ 12-13, *reprinted in* 1 J.A. 31. Taylor and Finberg petitioned the agency for review of these determinations, and the agency joined the two cases for a hearing before an ALJ.

After a two-day hearing, the ALJ found that Taylor, but not Finberg, was actively involved in the PACA violations. However, the ALJ found that both Taylor and Finberg were responsibly connected to Fresh America within the meaning of PACA. The ALJ concluded that the evidence presented by Taylor and Finberg did not demonstrate, as they claimed, that they were merely nominal officers of Fresh America. *Id.* ¶¶ 52-57, 82-85, 1 J.A. 46-47, 57-59. In reaching this conclusion, the ALJ found that Taylor was "vital to Fresh America Corp. and an important and influential officer," *id.* ¶ 56, 1 J.A. 47, and that Finberg "was a valuable member of the team that tried to keep Fresh America Corp. in business," *id.* ¶ 82, 1 J.A. 57. Petitioners appealed within the agency, and the ALJ's decision was reviewed by a Judicial Officer. Although the Judicial Officer did not adopt the ALJ's reasoning, he did affirm the judgments against Taylor and Finberg.

The Judicial Officer relied on three grounds to support his finding that Taylor and Finberg were responsibly connected to Fresh America. First, the Judicial Officer pointed to the petitioners' backgrounds, noting that "each had the experience, training, and education to serve in their positions as officers." *Judicial Officer Decision* at 13, 1 J.A. 19. Second, he noted that the annual reports and proxy statements filed with the SEC listed Taylor and Finberg as officers. *Id.* at 11-14, 1 J.A. 17-20. He

apparently thought this to be decisive, stating: "[T]he fact that each was identified in the SEC filings as an officer makes it difficult for me to conclude that they were only nominal officers." *Id.* at 14, 1 J.A. 20. Finally, the Judicial Officer relied on the fact that "Ms. Taylor and Mr. Finberg knew of Fresh America Corp.'s financial difficulties." *Id.*

The Judicial Officer also expressed the view that, although Taylor and Finberg told the board of directors about the payment provisions in PACA, their "only option to avoid a responsibly connected determination was to resign as officers of Fresh America Corp. prior to Fresh America Corp.'s PACA violations." *Id.* Because the Judicial Officer found that Taylor was not a nominal officer of Fresh America, he chose not to address her separate argument that the ALJ erred in finding her actively involved in the company's PACA violations. *Id.* at 14-15, 1 J.A. 20-21.

Finally, the Judicial Officer rejected the petitioners' argument that Fresh America was the alter ego of Hollingsworth:

> The record makes clear that, while Mr. Hollingsworth was a dominant chairman, the decisions attributed to Mr. Hollingsworth were made by the board of directors. The concept of alter ego goes well beyond the evidence presented in the instant proceeding. Fresh America Corp. had regular board meetings at which non-board members were present and reported to the board. The board of directors, with Mr. Hollingsworth as chairman, ran Fresh America Corp. While Mr. Hollingsworth and the board of directors made decisions usually reserved for individuals at a lower level of authority, it is understandable, considering Fresh America Corp.'s financial position and the recent investment made by [NTOF], which was managed by Mr. Hollingsworth, that such decisions came before the board of directors.

*Id.* at 15-16 (accompanying parenthetical omitted), 1 J.A. 21-22.

In their petition for review, Taylor and Finberg contest the Judicial Officer's findings that they were not merely nominal officers of Fresh America and that Fresh America was not the alter ego of Hollingsworth.

## II. ANALYSIS

### A. *Standard of Review*

"[W]e must uphold the Judicial Officer's decision unless we find it to be arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence." *Kleiman & Hochberg*, 497 F.3d at 686 (quoting *Kirby Produce Co. v. U.S. Dep't of Agric.*, 256 F.3d 830, 833 (D.C. Cir. 2001)) (internal quotation marks omitted). "[A]n agency rule would be arbitrary and capricious if the agency . . . entirely failed to consider an important aspect of the problem [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998) ("The Administrative Procedure Act . . . establishes a scheme of 'reasoned decisionmaking.' Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." (quoting *State Farm*, 463 U.S. at 52)). In this case, the petitioners argue that the Judicial Officer's decision defies this requirement of reasoned decisionmaking, because it pays no heed to the controlling law on nominal officers.

Although not stated explicitly, Taylor and Finberg also argue that the Judicial Officer's decision should be set aside for want of substantial evidence, which governs "on-the-record agency factfinding." *Allentown Mack*, 522 U.S. at 377. Under section 706(2)(E) of the Administrative Procedure Act, 5 U.S.C.

§ 706(2)(E), substantial evidence review requires a court to consider the whole record upon which an agency's factual findings are based. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).

> In describing the whole record review of § 706(2)(E), the Court acknowledged that the requirement "does not furnish a calculus of value by which a reviewing court can assess the evidence." [*Universal Camera*, 340 U.S. at 488.] It also noted that substantial evidence review does not negate the "respect" with which courts are to review decisions based on agency expertise. *Id.* Nor, the Court explained, does whole record review mean that a court can displace an agency's "choice between two fairly conflicting views," even though the reviewing court "would justifiably have made a different choice had the matter been before it *de novo*." *Id.* Rather, a reviewing court must "ask whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999). Or, put differently, a court must decide whether, on the record under review, "it would have been possible for a reasonable jury to reach the [agency's] conclusion." *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 366-67 (1998).

HARRY T. EDWARDS & LINDA A. ELLIOTT, FEDERAL STANDARDS OF REVIEW–REVIEW OF DISTRICT COURT DECISIONS AND AGENCY ACTIONS 176 (2007) (second brackets in original).

## B. The Judicial Officer's Decision that Petitioners Were Not Nominal Officers

PACA defines a "responsibly connected" person as one who is "affiliated or connected with a [licensee] as . . . [an] officer, director, or holder of more than 10 per centum of the outstanding stock." 7 U.S.C. § 499a(b)(9). There is no dispute that Taylor and Finberg were officers and thus come within this definition. As noted above, however, PACA also provides that:

> A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of [PACA] and that the person either was only nominally . . . [an] officer, director, or shareholder of a violating licensee.

*Id*. The question here is whether the petitioners met their burden of demonstrating by a preponderance of the evidence that they were not actively involved in the PACA violations and that they were merely nominal officers of Fresh America.

Before Congress amended PACA in 1995 to include an express exception for *nominal* officers, this circuit had for a number of years applied an "actual, significant nexus" test to determine whether a person was responsibly connected to an offending PACA licensee.

> Prior to the amendment of § 499a(b)(9) we held that an officer, director, or ten percent shareholder could rebut the presumption against her by showing either that the corporate violator is nothing more than the alter ego of its owner or that she was only a nominal officer, director, or shareholder of that corporation. *Bell v. Department of Agriculture*, 39 F.3d 1199, 1201 (D.C. Cir. 1994). In order to prove that the corporation is the alter ego of its owner one must show that the owner so dominated the corporation as "to negate its separate personality." *Quinn*, 510 F.2d at

758. In order to prove that one was only a nominal officer or director, one must establish that one lacked any "actual, significant nexus with the violating company" and, therefore, neither "knew [n]or should have known of the [c]ompany's misdeeds." *Minotto v. USDA*, 711 F.2d 406, 408-409 (D.C. Cir. 1983). *See also Quinn*, 510 F.2d at 756, n.84 (observing that situation in which "the affiliation is purely nominal and the so-called officer had no powers at all" is "radically different" from one in which a genuine officer simply "does not use the powers of his office.")

*Hart*, 112 F.3d at 1230-31 (brackets in original); *see also Quinn*, 510 F.2d at 755 ("[T]he Perishable Agricultural Commodities Act was designed to strike at persons in authority who acquiesced in wrongdoing as well as the wrongdoers themselves."); *id*. (persons who carry the title of officer are not subject to the statute's employment restrictions if they demonstrate that they were "powerless to curb" the wrongdoing). The law of this circuit thus laid the foundation for the nominal officer exception enacted by Congress in 1995.

In this case, the Judicial Officer cited *Hart* and purported to apply the "actual, significant nexus" test in determining that Taylor and Finberg were responsibly connected to Fresh America. *Judicial Officer Decision* at 9, 1 J.A. 15. The petitioners do not take issue with the applicability of the "actual, significant nexus" test. Rather, they argue that the Judicial Officer reached the wrong conclusion because he misapplied the legal standard. We agree.

Under the "actual, significant nexus" test, "the crucial inquiry is whether an individual has an actual, significant nexus with the violating company, rather than whether the individual has exercised real authority." *Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 611 (D.C. Cir. 1987) (internal quotation marks omitted). Although we have consistently applied the 'actual, significant nexus' test, our cases make clear that what is

really important is whether the person who holds the title of an officer had actual and significant power and authority to direct and affect company operations. For example, in *Kleiman & Hochberg,* the court found that the petitioner "did not prove that he qualified for the 'nominal' exception, nor could he do so[, because he] . . . concede[d that] he owned 31.6 percent of the corporation's outstanding stock, was the company's President, and was 'actively engaged in the day-to-day operations, management, *and control* of [the company].'" 497 F.3d at 692 (emphasis in original). The court also tellingly rejected the suggestion that a person cannot be responsibly connected to a violating licensee unless he either knew or should have known about the violations and then failed to take action to counteract the actions of others constituting the violations. On this point, the court noted that "neither the statutory definition of 'responsibly connected' nor the statutory 'nominal' and 'alter ego' exceptions suggest such a knowledge requirement." *Id.* (accompanying parenthetical omitted).

This case stands in stark contrast to *Kleiman & Hochberg*. The Judicial Officer's decision gives lip service to the "actual, significant nexus" test, but it fails to apply the test in any coherent fashion. Under the applicable legal standard, the agency must carefully assess a person's actual power and authority at the violating company – not merely the person's title, background, and knowledge of PACA violations – in order to determine whether the person was responsibly connected to an offending PACA licensee. The Judicial Officer failed to do this.

As noted above, in reaching the conclusion that Taylor and Finberg were not merely nominal officers of Fresh America, the Judicial Officer relied primarily on three factors: the petitioners' professional backgrounds; annual reports and proxy statements that listed the petitioners as officers; and petitioners' knowledge of Fresh America's financial difficulties. Each of

these factors may be relevant in determining whether a person is merely a nominal officer.  However, none of these factors, without more, is dispositive.  Indeed, even taken together, these three factors do not demonstrate a person's actual power and authority within a company.  Petitioners may have possessed impressive professional backgrounds and officer titles, and they may have been aware of the company's financial woes, and yet still have had no power or authority to alter the course of company operations.

The decisions in *Quinn*, 510 F.2d at 747, *Minotto*, 711 F.2d at 407, and *Bell*, 39 F.3d at 1200, make it clear that an individual's background may be *relevant* to the determination of whether he or she is a nominal officer.  But we have never found this factor to be *dispositive.*  If an individual has past experience in upper-level management, this would be consistent with a finding that the individual is currently working in upper-level management.  But past experience is not proof of one's current station.

Similarly, although an individual's title can be relevant to a consideration of a person's current situation, title alone is not dispositive.  Indeed, the statute makes this absolutely clear.  Section 499a(b)(9) states that an "officer" "shall not be deemed to be responsibly connected" if the person demonstrates that he or she was only "nominally" an officer of the violating licensee.  Obviously, title alone is not conclusive, unless the officer fails to demonstrate by a preponderance of the evidence that he or she was not actively involved in the activities resulting in a violation of PACA and that he or she was only nominally an officer of a violating licensee.  The nominal officer exception plainly contemplates situations in which a person's title is not consistent with the person's actual responsibilities.

The Judicial Officer erred in holding that, "absent very extraordinary circumstances, an individual who is an officer of a publicly traded company, and identified as an officer in the

company's filings with the SEC, cannot be found to be a nominal officer as that term is used in the PACA." *Judicial Officer Decision* at 14, 1 J.A. 20. This is not a correct statement of the governing law. "[A]n officer may be 'nominal' even though the corporate records . . . make him out to be a real one." *Bell*, 39 F.3d at 1202. The Department characterizes the Judicial Officer's opinion on this point as mere dictum or as an alternative holding. Resp'ts' Br. at 39-40. We disagree, for it is clear that the Judicial Officer viewed Fresh America's SEC filings as a critical factor in his decision.

Finally, the Judicial Officer cited Taylor and Finberg's knowledge of Fresh America's financial difficulties in determining that they were responsibly connected to the licensee. This, too, resulted in an erroneous application of the law. Knowledge may be relevant with respect to a consideration of whether a person was "actively involved in the activities resulting in a violation" of the statute. However, knowledge, without more, surely does not give compelling evidence of a person's actual power and station within a company. This court has made it clear that "neither the statutory definition of 'responsibly connected' nor the statutory 'nominal' and 'alter ego' exceptions suggest such a knowledge requirement." *Kleiman & Hochberg*, 497 F.3d at 692 (accompanying parenthetical omitted).

In *Minotto*, this court found that there was no evidence to "support the [Department Hearing Officer's] conclusion that Minotto knew or should have known of the Company's misdeeds." 711 F.2d at 409. But this statement was offered to confirm that Minotto "had no policy or decision-making role" and "was essentially a clerical employee." *Id.* This is very different from saying that it must be assumed that a person with knowledge of a company's wrongdoings has meaningful power and authority within the company. There are many people in company operations who may be aware of bad deeds by virtue

of where or for whom they work, but nonetheless decline to participate in these deeds and have no power or authority to effect change. Indeed, in this case, Taylor and Finberg knew that Fresh America was in danger of violating PACA, but they failed to convince the board to promptly pay produce sellers. Just as a lack of knowledge cannot save a non-nominal officer from the consequences of PACA, *Kleiman & Hochberg*, 497 F.3d at 692, mere knowledge of PACA violations cannot turn a nominal officer into a full-fledged one.

As our decisions have made clear, actual power and authority are the crux of the nominal officer inquiry. In *Bell*, the petitioner "seem[ed] to have been made an officer and a director of Sunrise for the administrative convenience of the company" and "never participated in the formal decisionmaking structures of the corporation, such as board meetings." 39 F.3d at 1204. Similarly, Minotto "had no policy or decision-making role," *Minotto*, 711 F.2d at 409, and Quinn "did not to any extent participate in the management of the company's affairs," *Quinn*, 510 F.2d at 753.

In this case, the Judicial Officer specifically found that "[t]he board of directors, with Mr. Hollingsworth as chairman, ran Fresh America." *Judicial Officer Decision* at 15, 1 J.A. 21. He also tellingly found that "Mr. Hollingsworth and the board of directors made decisions usually reserved for individuals at a lower level of authority," *id*. at 15-16, 1 J.A. 21-22. Yet, the Judicial Officer failed to take this into account in assessing whether the petitioners were merely nominal officers.

In sum, the Judicial Officer purported to apply the "actual, significant nexus" test, yet failed to consider whether Taylor or Finberg had actual power and authority at Fresh America. This defies reasoned decisionmaking. As the Court noted in *Allentown Mack*:

> Reasoned decisionmaking, in which the rule announced is the rule applied, promotes sound results, and unreasoned decisionmaking the opposite. The evil of a decision that applies a standard other than the one it enunciates spreads in both directions, preventing both consistent application of the law by subordinate agency personnel (notably ALJ's), and effective review of the law by the courts.

522 U.S. at 375. Because the Judicial Officer did not faithfully apply the applicable legal standard in determining whether the petitioners were responsibly connected to Fresh America, we vacate and remand to the agency to apply the correct legal standard as we articulate it today. "It is hard to imagine a more violent breach of [the reasoned decisionmaking] requirement than [when an agency] appl[ies] a rule of primary conduct or a standard of proof which is in fact different from the rule or standard formally announced." *Id*. at 374. We express no opinion on whether Taylor was actively involved in Fresh America's PACA violations, because the Judicial Officer never reached this issue.

## C. *The Judicial Officer's Decision that Fresh America Was Not the Alter Ego of Arthur Hollingsworth*

Section 499a(b)(9) states:

> A person shall not be deemed to be responsibly connected if the person demonstrates by a preponderance of the evidence that the person was not actively involved in the activities resulting in a violation of [PACA] and that the person . . . was not an owner of a violating licensee . . . which was the alter ego of its owners.

The petitioners claim that the Judicial Officer erred in holding that Fresh America was not the alter ego of its chairman of the board, Arthur Hollingsworth. We disagree.

As we noted in *Kleiman & Hochberg*, "the 'alter ego' exception applie[s] to cases in which the violator, although formally a corporation, is essentially an alter ego of its owners, so dominated as to negate its separate personality. A petitioner who [is] not a true owner of such a corporation [will] be spared the consequences of the responsibly connected determination." 497 F.3d at 692 n.8 (brackets in original) (internal quotation marks omitted). In this case, the Judicial Officer found that "the record contains no evidence that Mr. Hollingsworth and Fresh America Corp. were viewed as one and the same." *Judicial Officer Decision* at 16, 1 J.A. 22. This finding is clearly supported by substantial evidence. A fair reading of the entire record reveals that Fresh America was dominated by the board and its chairman, not by Hollingsworth alone. We therefore find no merit in petitioners' arguments on this point.

### III. CONCLUSION

The petition for review is granted in part. The Judicial Officer's decision on the nominal officer issue is vacated and the case is hereby remanded to the agency for further proceedings consistent with this opinion.

BROWN, *Circuit Judge*, dissenting: The court vacates the Judicial Officer's determination that Taylor and Finberg were responsibly connected to Fresh America because my colleagues believe the Judicial Officer "misapplied" our "actual, significant nexus" test. Maj. Op. 13. I respectfully disagree. It is the court that misapplies the test in two respects: First, the court fails to defer to the Judicial Officer's legitimate focus on Taylor and Finberg's actual knowledge of their company's violations, in combination with other relevant indicators of their "responsibly connected" status, even though we have previously suggested such knowledge may be dispositive. Second, the court makes "power and authority" the *sine qua non* of responsible connection to the PACA-violating company, even though we have previously denied such a requirement.

I

The Judicial Officer found that Taylor and Finberg were "responsibly connected" to Fresh America under the "actual, significant nexus" test, in part because "they knew, or should have known, about the violation being committed and failed to counteract or obviate the fault of others." *Judicial Officer Decision* at 13–14, 1 J.A. 19–20. Specifically, the Judicial Officer found, "Ms. Taylor and Mr. Finberg knew of Fresh America Corp.'s financial difficulties. Although they told the board of directors of the prompt payment provisions of the PACA, they failed to convince the board of directors to comply with the provisions of the PACA." *Id.* at 14, 1 J.A. 20. The record amply supports this finding. Finberg testified that at one point he called a meeting of the board without the chairman's permission, and he and Taylor talked to the board about Fresh America's late produce payments for "ten or fifteen minutes." Hearing Tr. (Jan. 30, 2008) at 813, 1 J.A. 289. Taylor testified that she discussed "PACA payables"

with Hollinger, but he responded, "PACA people [who] want to get paid in . . . 30 days" were "crybabies." *Id.* at 545, 1 J.A. 215. She recalled that when a $5 million investment came in, it was made clear "that additional money . . . was not to be used to pay down PACA payables." *Id.* at 546, 1 J.A. 216.

Contrary to the court's suggestion, the Judicial Officer did not hold that "mere knowledge of PACA violations [can] turn a nominal officer into a full-fledged one." Maj. Op. 17. We need not decide whether knowledge of company wrongdoing is sufficient by itself, because the Judicial Officer also relied in part on the officers' high levels of compensation—a detail the court does not mention. *Judicial Officer Decision* at 11–12, 1 J.A. 17–18. The Judicial Officer found Taylor and Finberg earned salaries of $175,000 and $145,000, respectively, and compensation packages that included "bonus potential, stock options, and other 'fringe benefits.'" *Id.* Compensation is a relevant consideration under the "actual, significant nexus" test. *See Minotto v. USDA*, 711 F.2d 406, 408–09 (D.C. Cir. 1983).

Moreover, the Judicial Officer expressly considered Taylor and Finberg's "experience, training, and education," *Judicial Officer Decision* at 13, 1 J.A. 19, which were consistent with genuine officers'. *Id.* at 10–13, 1 J.A. 16–19. Like compensation, professional qualifications are relevant to the "actual, significant nexus" test. *See Veg-Mix, Inc. v. USDA*, 832 F.2d 601, 612 (D.C. Cir. 1987) ("[The officer's] legal training put him on notice of the responsibilities of a corporate director. . . . Thus his case is easily distinguishable from those of the nominal officer and corporate director in *Quinn* and *Minotto*, who were unsophisticated persons employed by the wrongdoers."); *Minotto*, 711 F.2d at 409 (reversing the Department's "responsibly connected" determination because, among other reasons, the so-called

officer "lacked both the training and the experience to be an active director").

Taylor is a certified public accountant with prior experience as a "chief financial officer and vice president of finance and administration" at The Great Train Store, a company she helped to take public. Immediately before coming to Fresh America, she worked with the CEO of another troubled company, Intellisys Group, to get it refinanced. When Intellisys was purchased by another company, Taylor stayed on to help it through the transition. *Judicial Officer Decision* at 11, 1 J.A. 17.

Finberg was also well qualified to serve as an officer. He rose up through the ranks of Fresh America over several years, starting with summer jobs at its predecessor company. While still in college, Finberg worked full-time as general manager of two locations. After graduating, Finberg earned a series of promotions, serving variously as corporate liaison with the company's primary customer, director of customer service, director of national programs, and general manager of a distribution center. Only after gaining this leadership experience was Finberg elevated to vice president of sales and marketing, and eventually vice president of business development. *Id.* at 12, 1 J.A. 18.

This case therefore presents the question whether the Department's "responsibly connected" determination is an arbitrary and capricious application of the "actual, significant nexus" test when the officer has actual knowledge of her company's PACA violations and a salary and résumé in keeping with her title. I think not.

We have previously recognized that an officer's knowledge of her company's PACA violations may be

decisive under the "actual, significant nexus" test. In *Bell v. USDA*, the possibility that knowledge of company wrongdoing might confer "responsibly connected" status on an otherwise nominal "officer" led us to remand the Department's decision "for further consideration." 39 F.3d 1199, 1202 (D.C. Cir. 1994). Bell was a produce salesman who performed no duties "that can be specifically attributed to his being vice-president." *Id.* at 1200. He had heard, however, "that some of the company's checks had bounced." *Id.* at 1200. We suggested that even where the employee was dubbed an "officer" only "for the administrative convenience of the company" and even where he "never participated in the formal decisionmaking structures of the corporation," the Department could find him "responsibly connected" by virtue of his knowledge of the company's PACA violations. 39 F.3d at 1204. Although the Judicial Officer in *Bell* had made no finding about Bell's knowledge, we observed "Bell's awareness of some company wrongdoing may provide a distinction between this case and *Quinn* and *Minotto*." *Id.* at 1204. We rejected the Department's litigation position that under our prior cases "ignorance of company wrongdoing is a *sine qua non* of a finding that an officer's or director's relation to the corporate licensee was nominal," *id.*, but we implied that the Department could reasonably interpret some kinds of knowledge as establishing responsible connection *per se*, and asked the Department on remand to "formulate some principle delineating the role of differing degrees of knowledge of general corporate difficulties, or of 'transactions which gave rise to the underlying violations', or of the violations themselves, consistent with our cases." *Id.* at 1204–05.

Although the Judicial Officer in this case did not set out the full taxonomy we requested in *Bell*, he did make an acceptable judgment about how to treat "knowledge . . . of the

violations themselves." *Id.* Remember, Taylor and Finberg were found to have actual—not just constructive—knowledge of the PACA violations. The Judicial Officer said that when Taylor and Finberg "failed to convince the board of directors to comply with the provisions of PACA," their "only option to avoid a responsibly connected determination was to resign as officers of Fresh America." *Judicial Officer Decision* at 14, 1 J.A. 20. In other words, direct knowledge of a PACA violation, in the mind of an "officer" whose compensation, "experience, training, and education" are commensurate with the title, constitutes "responsible connection" to the violating company.

The court is hard-pressed to call this an unreasonable interpretation of the statute, especially since we have stated an even harsher rule in dicta. *Hart v. USDA*, 112 F.3d 1228, 1231 (D.C. Cir. 1997) ("In order to prove that one was only a nominal officer or director, one must establish that one lacked any 'actual, significant nexus with the violating company' and, *therefore, neither 'knew nor should have known* of the company's misdeeds.'" (emphasis added) (quoting *Minotto*, 711 F.2d at 408–09)). The Judicial Officer's remedy is certainly "consistent with our cases." *Bell*, 39 F.3d at 1204–05. In fact, it comes straight from *Martino v. USDA*:

> "The fact that an individual has not exercised 'real' authority in the sanctioned company is not controlling: certainly the individual could have resigned as an officer and director. . . . It was his free choice not to do so. Having made that choice, the appellant[s] assumed the burdens imposed by the Act."

801 F.2d 1410, 1414 (D.C. Cir. 1986) (quoting *Birkenfield v. United States*, 369 F.2d 491, 494–95 (3d Cir. 1966)).

6

II

The court recognizes that that an officer's knowledge of his company's PACA violations is relevant to whether he is responsibly connected, Maj. Op. 15, but concludes that it cannot be dispositive because "actual power and authority are the crux of the nominal officer inquiry," *Id.* at 16. This turns the doctrine on its head. Under our case law, "the crucial inquiry is whether an individual has an 'actual, significant nexus with the violating company,' *rather than whether the individual has exercised real authority*." *Veg-Mix*, 832 F.2d at 611. In other words, "[t]he fact that an individual has not exercised 'real' authority in the sanctioned company is not controlling." *Martino*, 801 F.2d at 1414. The court now contradicts these statements by superimposing a "power and authority" requirement on the "actual, significant nexus" test.

Until today, that test contained no such requirement. Instead, managerial control was a sufficient—but not necessary—indicator of the requisite nexus with the violating company. *See Siegel v. Lyng*, 851 F.2d 412, 417 (D.C. Cir. 1988). We have recognized an officer may be responsibly connected to a violating company in multiple ways, of which real managerial power is only one. For example, a minority shareholder may not have actual power or authority to prevent (or even discover) the company's PACA violations, but our cases have approved a sort of strict liability for so-called "officers" who hold a certain percentage of the violating company's stock. *See Veg-Mix*, *Inc. v. USDA*, 832 F.2d 601, 611 (D.C. Cir. 1987) ("In *Martino*, we found that ownership interest of 22.2 percent of the violating company's stock was enough support for a finding of responsible connection." (citing 801 F.2d at 1414)).

Even if the court's new "power and authority" test were one reasonable interpretation of the statute, it is not the interpretation employed by the Judicial Officer in this case, nor is it required by our precedent. After telling the Department it could find at least some kinds of knowledge of company wrongdoing to be dispositive evidence of an officer's "actual, significant nexus" to the violating company, *see Bell*, 39 F.3d at 1204–05, we cannot now declare arbitrary and capricious the Judicial Officer's decision based on Taylor and Finberg's actual knowledge of Fresh America's consummated PACA violations, along with compensation and qualifications commensurate with the officers' titles. We must defer to the Department's reasonable interpretation. *See Coosemans Specialties, Inc. v. USDA*, 482 F.3d 560, 564 (D.C. Cir. 2007).

### III

I do not mean to suggest the Department is bound forever to apply the "actual, significant nexus" test. We have previously indicated the 1995 amendment to 7 U.S.C. § 499a(b)(9) might call for different criteria. *See Norinsberg v. USDA*, 162 F.3d 1194, 1199 (D.C. Cir. 1998). Perhaps, we could have viewed *Kleiman & Hochberg, Inc. v. USDA*, 497 F.3d 681 (D.C. Cir. 2007), as a paradigm shift rendering the old test obsolete. Instead, the court treats that case as discerning a "power and authority" requirement in the "actual, significant nexus" test even though we neither mentioned that test nor suggested the officer's managerial control was the cause-in-fact—much less a necessary condition—of his responsible connection to the company. *See* 497 F.3d at 692. He also owned 31.6 percent of the company's stock, *id.*, which is more than "enough support for a finding of responsible connection," *Veg-Mix, Inc.*, 832 F.2d at 611. I have no objection in principle to a demand for

evidence of "power and authority." But the Judicial Officer in this case explicitly employed the "actual, significant nexus" test, *Judicial Officer Decision* at 13, 1 J.A. 19, and neither the parties nor my colleagues have seen fit to challenge its applicability.[1] If the "actual, significant nexus" test applies, as the court holds it does, the Judicial Officer reasonably determined Taylor and Finberg's direct knowledge of their company's PACA violations, combined with their officer-appropriate salaries and qualifications, makes them responsibly connected to the violating company. Only if that test does *not* apply may a finding of "power and authority" be required instead. We cannot have it both ways.

---

[1] We have the authority to consider the propriety of the Department's continued application of the "actual, significant nexus" test even if the parties do not object. "[T]he appellate court . . . always possesses discretion to reach an otherwise waived issue logically 'antecedent to and ultimately dispositive of the dispute before it.'" *Crocker v. Piedmont Aviation*, 49 F.3d 735, 740 (D.C. Cir. 1995) (quoting *United States Nat'l Bank of Oregon v. Independent Ins. Agents of America*, 508 U.S. 439, 447 (1993)).