# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 5, 2021          Decided August 3, 2021

No. 20-1235

STEVEN C. FINBERG,
PETITIONER

v.

UNITED STATES DEPARTMENT OF AGRICULTURE AND UNITED
STATES OF AMERICA,
RESPONDENTS

On Petition for Review of an Order
of the Department of Agriculture

*Louis W. Diess, III* argued the cause for petitioner. On the briefs was *Mary Jean Fassett*.

*Charles E. Spicknall*, Attorney, U.S. Department of Agriculture, argued the cause and filed the brief for respondent.

Before: ROGERS and KATSAS, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* SENTELLE.

SENTELLE, *Senior Circuit Judge*: Steven Finberg petitions for review of an order of the United States Department of Agriculture ("USDA") determining that he was responsibly connected to his employer's violation of the Perishable Agricultural Commodities Act and subjecting him to licensing and employment sanctions. Finberg contends that the agency's Judicial Officer's determinations that (1) he was involved in activities that resulted in his employer failing to pay its suppliers and (2) his employer was not the alter ego of its owners were unsupported by substantial evidence. We agree and reverse.

## I.

### A.   Statutory background

The Perishable Agricultural Commodities Act prohibits any person from acting as a merchant, dealer, or broker of fresh fruits and vegetables without a license from the USDA. 7 U.S.C. § 499c(a). The term "person" within the Act includes "individuals, partnerships, corporations, and associations." *Id.* § 499a(b)(1). The Secretary of Agriculture may suspend or revoke the license of any licensee that engages in unfair conduct in violation of the Act. *Id.* § 499h(a). Unfair conduct includes, among other practices, failing to promptly make full payment to suppliers. *Id.* § 499b(4).

Licensees may not employ "any person who is or has been responsibly connected with any person whose license has been revoked or is currently suspended." *Id.* § 499h(b)(1). A person is presumed to be responsibly connected to a corporation or association if he is an "officer, director, or holder of more than 10 per centum of the outstanding stock." *Id.* § 499a(b)(9). However, that person can rebut the presumption by meeting a

two-part test. First, he must show "that the person was not actively involved in the activities resulting in a violation of" the Act. Second, he must show that he was only "nominally a[n] . . . officer, director, or shareholder" or was "not an owner of a violating licensee . . . which was the alter ego of its owners." *Id.* Both showings must be made by a preponderance of the evidence. *Id.*

## B. Factual background

At the time of the events leading to this proceeding, Adams Produce Company was a distributor of fresh fruits and vegetables. Steven Finberg became an Executive Vice President of the business in 2007. In 2009, he became the firm's Chief Operating Officer. In those roles Finberg oversaw sales, marketing, and logistics. At that time, Scott Grinstead was the CEO of Adams.

In October 2011, federal authorities began investigating Adams Produce for fraud against the Department of Defense. Adams Produce contracted with the Department of Defense to supply it fruits and vegetables, ostensibly at market prices. Unbeknownst to the government, Adams Produce was charging well above market prices. An anonymous whistleblower informed federal authorities that Adams Produce was exchanging inflated invoices with another business to provide documentation enabling Adams Produce to fraudulently charge the government higher prices. According to Finberg, he was completely unaware of the scheme until later in October 2011, when two suppliers and Adams Produce's CFO discussed the scheme in front of him over lunch. At that lunch, Finberg agreed with the suppliers and the CFO to gradually end the scheme to avoid further detection. There is no evidence in the record to suggest that Finberg knew about the scheme earlier or was any more involved.

Adams Produce hired a law firm to internally investigate its operations in response to the federal investigation. The investigation revealed that CEO Grinstead had engaged in extensive fraud, including falsifying financial information to convince an outside business to invest in Adams Produce and diverting hundreds of thousands of dollars for his own use. Adams Produce paid the law firm over $2 million for its work.

Shortly thereafter, Adams Produce's legal troubles caused its bank to freeze its accounts and lines of credit. Prior to the unraveling of Grinstead's fraud, Adams Produce had relied on a line of credit from PNC Bank to cover invoices from suppliers. The bank froze the business's accounts in reaction to the exposure of the fraudulent practices. Without its funding, Adams Produce was unable to promptly pay produce suppliers approximately $10 million. The business was eventually able to arrange $8 million in payments to suppliers but was unable to pay the remaining $2 million. Adams Produce declared bankruptcy in April 2012.

## C.  Legal proceedings

The government obtained indictments against Grinstead and Finberg for their roles in the fraud at Adams Produce. Following the indictments, Grinstead pled guilty to wire fraud, misprision of felony, and multiple failures to file a tax return. Finberg, in turn, pled guilty to misprision of a felony. In his plea agreement, Finberg admitted to agreeing with others to bring the Department of Defense fraud in for a "soft landing" rather than ending it immediately. App. 518.

In June 2013, a disciplinary complaint was filed against Adams Produce with the Agricultural Marketing Service within the USDA. The complaint alleged that Adams Produce

violated the Perishable Agricultural Commodities Act, 7 U.S.C. § 499b(4), by failing to promptly pay its suppliers $10 million. The agency determined that Adams Produce "willfully, repeatedly and flagrantly" violated the Act by failing to pay. App. 16.

The agency's determination that the company violated the Act also triggered the Act's employment bar for each person at Adams Produce who was responsibly connected to the violation. 7 U.S.C. §§ 499a(b)(9), 499h(b)(1). Finberg and other officers petitioned for review before an ALJ to demonstrate that they were not responsibly connected to the violation. The other officers succeeded in their petitions, in part, because the ALJ found that Adams Produce was the alter ego of Grinstead. Nevertheless, the ALJ determined that Finberg was responsibly connected. Finberg then appealed the ALJ's decision to the USDA Judicial Officer, the final stage of review available to Finberg within the USDA. Due to the Supreme Court's decision in *Lucia v. SEC*, 138 S. Ct. 2044 (2018), and the consequent appointment of a new USDA Judicial Officer, Finberg's case was remanded to another ALJ who received new briefing, reviewed the existing record *de novo*, and reached the same conclusion as the previous ALJ. The case then reached the USDA Judicial Officer on its merits.

The Judicial Officer affirmed the ALJ's decision in the opinion now under review with little analysis or consideration of the evidence. The Officer stated that the "actively involved" requirement was met whenever a petitioner "exercise[s] judgment, discretion, or control with respect to the activities that resulted in a violation of the PACA." App. 23 (quoting *In re Michael Norinsberg*, 58 Agric. Dec. 604, 611–12 (USDA 1999)). The Officer concluded that Finberg exercised judgment, discretion, or control once he learned of the fraudulent scheme, stayed silent, and failed to report what he

learned to the Department of Justice. As for the requirement that the "activities . . . resulted in a violation of the PACA," the Judicial Officer provided no independent analysis. Instead, the Officer quoted the ALJ's statement that "Indeed, the record demonstrates by a preponderance of the evidence that Petitioner Finberg's activities helped bring about the downfall of Adams, which resulted in Adams' violation of the PACA." App. 23–24. The Judicial Officer's analysis of the alter ego issue was similarly brief, quoting the ALJ and concluding that Finberg did not prevail under the alter ego prong because he "had actual knowledge of fraudulent activities, yet stayed silent and failed to report what he learned to the Dept of Justice." App. 26.

Finberg now petitions us for review of the Judicial Officer's decision. He argues that the Judicial Officer's order was arbitrary and capricious and lacked substantial evidence in its determination that he was responsibly connected to Adams Produce's violations of the Act. In particular, he argues that the Judicial Officer lacked any evidence demonstrating a causal connection between Finberg's activities and the failure-to-pay violations, and that moreover, Finberg's activities improved the financial well-being of the business. He also argues that Adams Produce was the alter ego of Grinstead.

**II.**

The Administrative Procedure Act requires us to set aside the Judicial Officer's order if it is "arbitrary, capricious," "not in accordance with law," or "unsupported by substantial evidence." 5 U.S.C. § 706; *Taylor v. USDA*, 636 F.3d 608, 613 (D.C. Cir. 2011). Agency action is arbitrary and capricious if the agency fails to adequately explain or make statutorily-required findings. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). We do not require

agency explanations to be "so precise, detailed, or elaborate as to be a model for agency explanation," *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 538 (2009) (Kennedy, J., concurring), and will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974). Substantial evidence is lacking if, considering the record as a whole, no reasonable factfinder could have made the same finding as the agency. *Inova Health Sys. v. NLRB*, 795 F.3d 68, 80 (D.C. Cir. 2015).

The Judicial Officer determined that Finberg was responsibly connected to Adams Produce's violations of the Act. As previously discussed, that is presumed true because Finberg was an officer of the business. 7 U.S.C. § 499a(b)(9). That presumption is rebutted, however, if (1) Finberg was not "actively involved in the activities resulting in a violation of [the Act]," and (2) he was only nominally an officer or he was not a shareholder and the company was the alter ego of its owners. *Id.* We assume, without deciding, that Finberg was actively involved in the scheme to defraud the Department of Defense. Finberg does not argue that he was only nominally an officer. The agency found that he was not a shareholder of the firm. We turn then to the remaining questions under section 499a(b)(9): whether the activities Finberg was involved in resulted in the charged violation of the Act, and whether Adams Produce was the alter ego of its owners.

**A.**

The Judicial Officer obviously lacked substantial evidence for the determination that the activities Finberg was involved in resulted in Adams Produce's failure to pay its suppliers in violation of the Act. Indeed, the Officer completely failed to make any factual findings connecting Finberg and the

business's failure to pay its suppliers. One sentence in the entire order, quoted from the ALJ's decision that the Judicial Officer reviewed, alludes to causation: "Finberg's activities helped bring about the downfall of Adams, which resulted in Adams' violation of the PACA." App. 24.

The Judicial Officer's conclusion is a syllogism, resting directly on multiple premises, something like the following: The violation of the Act involved the failure to pay suppliers; the previous fraud with which Finberg was involved deprived the company of some financial assets; therefore, Finberg's actions are causally connected to the commission of the charged acts of nonpayments. The validity of the syllogism is subject to much question. However, even assuming that the Judicial Officer's view of the law was defensible, there is no evidence to support the premise that any financial degradation attributable to the fraud caused the ultimate failure to pay. The Judicial Officer's order contains no findings about how much money the firm lost due to the scheme or what the firm's finances would have looked like in the absence of the scheme.

Explicitly tracing out the connection between the scheme Finberg participated in and Adams Produce's violations of the Act is particularly necessary in circumstances such as these when Adams Produce was embroiled in multiple fraudulent schemes. It is almost certain that PNC Bank would have frozen Adams Produce's accounts if and when the financial misrepresentations which were independent of the Department of Defense fraud became known. Moreover, as Finberg persuasively argues, the scheme to defraud the Department increased the business's revenues in the short term.

**B.**

Likewise, the Judicial Officer lacked substantial evidence for determining that Adams Produce was not the alter ego of its owners. Ordinarily, a determination of whether a business was the alter ego of its owners would consider, for example, evidence that the owner dominated the firm or diverted corporate assets. *E.g.*, *Norinsberg*, 56 Agric. Dec. 1840, 1864 (1999). In fact, the Judicial Officer's order did not make any factual findings relevant to the question of whether Adams Produce was the alter ego of Grinstead. The omission is all the more glaring because the Judicial Officer's order determining that other officers of Adams Produce were not responsibly connected to its violations emphasized "the profligate spending by CEO Scott Grinstead using the money of Adams Produce Company LLC as if that money were his personal funds." *In re Jonathan Dyer*, 2020 WL 8174373, at *6 (USDA Jan. 9, 2020).

Instead of considering the same factors in Finberg's case, the Judicial Officer cited Finberg's knowledge of and involvement in fraud at Adams Produce to find that the firm was not the alter ego of its owners. The officer's analysis conflated the active involvement question and the alter ego question. The text of the Act makes clear that the active involvement inquiry and the alter ego inquiry are distinct factors. *See* 7 U.S.C. § 499a(b)(9). Indeed, on the record before us, it is clear that the only reasonable conclusion the Judicial Officer could have made is the one made for the other officers that sought review: that Adams Produce was the alter ego of Grinstead. *See Jonathan Dyer*, 2020 WL 8174373, at *4–6.

\*   \*   \*

In sum, the agency lacked substantial evidence for its conclusion that Finberg's activities contributed to Adams

Produce's violation of the Act and its conclusion that Adams Produce was not the alter ego of Grinstead. "[W]e reverse an agency's decision" when, in cases such as this, "'the record is so compelling that no reasonable factfinder could fail to find to the contrary.'" *Orion Reserves Ltd. v. Salazar*, 553 F.3d 697, 704 (D.C. Cir. 2009) (quoting *Highlands Hosp. Corp. v NLRB*, 508 F.3d 28, 31 (D.C Cir. 2007)).

The order of the USDA is reversed.

*So ordered.*